THOMAS T. BONHAM, Plaintiff in Error, v. ANDREW J. GALLO-
WAY et al., Defendants in Error.

ERROR TO WABASH.

It is erroneous to enter a decree ascertaining the amount due a party and directing the
payment of it, when that party is not in court.

A cause of action against the principal debtor in favor of the surety, does not accrue
until the surety has paid the debt.

A gave a mortgage to B to indemnify B in case he should have to pay the debt of A,
conditioned that if A should pay and satisfy his note, by renewal or otherwise, then
to be void. A renewed his note with different securities; thereupon B assigned the
mortgage to the new securities.

*Held*, that the mortgage could not be assigned by B so as to cut off the intervening
rights of other mortgagees, and that the rights of B ceased upon the renewal of the
note, a transfer to others not having existed in contemplation of the parties at the
time of the execution of the mortgage.

All the parties in interest should be made parties to a bill in chancery, unless some
reason is shown for not doing so.

IN this case the complainant filed his bill on the chancery
side of the Wabash Circuit Court, praying the foreclosure of a
mortgage.   To such bill the defendant Galloway, who was
the only defendant, presented his plea, setting forth the fact,
that previous to the execution of the mortgage sought to be
foreclosed, being indebted to the president, directors, and com-
pany of the State Bank of Illinois, he, the said defendant, ap-
plied to one James Mahon to become his surety to said corpo-
ration for the payment of his debt.   That Mahon agreed to do
so on the execution of a mortgage to him on the same premises
set forth in complainant's bill, and sought by him to be subjected
to sale, conditioned to save him harmless; which was done,
and such mortgage duly executed and recorded, and in full force
at the time of the execution of mortgage to complainants.   That
afterwards said Mahon, wishing to retire from his position as
surety, after the execution of complainant's mortgage, and on
the renewal of said defendant's note to the bank, proposed to
and procured one Elijah Harris and one Hiram Bell to become
sureties for this defendant in his stead, they agreeing to do so
on being secured by a transfer of Mahon's said mortgage of in-
demnity to them, and that such transfer was with defendant's

consent. That said Harris and Bell became sureties, and such transfer was made by Mahon. That the debt due the bank was still wholly due and unpaid, and that, therefore, said Harris and Bell should be made parties, co-defendants, with him, as he is advised, &c. All of which facts defendant avers to be true, &c., and prays the judgment of the court, &c. To this plea, the complainant, by his solicitor, demurred; upon joinder in which the demurrer was overruled, and leave given to complainant to amend his bill, and the cause continued. Afterwards, on the 24th June, 1845, filed in said court his amended bill, which sets sets forth an indebtedness from defendant, Galloway, to complainant, in the sum of five hundred dollars; and that, in order to secure the same, on the 23d of May, 1840, that the said Galloway executed a mortgage to the complainant, conveying, &c., upon the condition set forth, the northerly halves or moieties of inlots Nos. 313 and 315 in the town of Mount Carmel, county of Wabash, and State of Illinois. That the condition of said mortgage was broken, and the estate of complainant to said lands become absolute at law; that the whole of said five hundred dollars, with a large arrear of interest, was then due and owing on the security thereof, and charging that Galloway ought to pay the same, or the said lands sold, &c. The amended bill proceeds to set forth, further, that one James Mahon also holds a mortgage on said premises, dated the 11th day of March, A. D. 1840, duly recorded, &c., which was assigned by said Mahon to one Hiram Bell and Elijah Harris; and the complainant charges, that when such last-mentioned mortgage was so assigned, the same was fully discharged, and that such transfer was made in fraud of the right of complainant without his knowledge, and without any consideration moving from said assignees, or others for them. The prayer of the bill is in the usual form, asking an account of the sale of the mortgaged premises, &c.

On the 18th day of April, 1846, Hiram Bell, one of the defendants, by E. B. Webb, Esq., his solicitor, filed his answer to said complainant's bill, which by agreement is regarded as the answer of his co-defendant, Harris, also; by which answer, said defendants, Bell and Harris, neither admitting or denying complainant's rights under his said mortgage, set up the mortgage

to Mahon, the transfer of the same by Mahon to them and one Abner Armstrong, on their becoming sureties for and at the request of Galloway, to the bank in lieu of Mahon, who declined remaining his surety to such bank, as contemplated in said mortgage of indemnity, &c. That they renewed the note to the bank; and that, in consideration of such renewal and his release, said Mahon, on the 3d day of October, A. D. 1840, by indorsement, assigned his said mortgage to them. That such transfer was intended to place said defendants and Armstrong in the stead of said Mahon, as security, and to protect them by said mortgage, which was intended to be retained in full force. Said answer denies fraud, &c. It shows that Galloway has not paid the debt due the bank; but that the same and a large arrear of interest is in full force, and a judgment had therefor against Harris and Bell. The answer concludes by praying that in any disposition of the lands, the court may respect their prior lien; and that if such premises be ordered to be sold, that the court may direct that the bank debt, &c. be first paid out of proceeds, and defendant saved harmless, &c. This answer is duly sworn to by defendant Bell.

On the 20th day of April, 1846, the said cause being called for hearing, said defendants, Galloway and Mahon, were defaulted, and the bill taken for confessed as against them; and the same coming on for final hearing on bill, answer, and exhibits, the same were referred to a Master in Chancery to take an account, &c., and report, &c., as well touching the debt due complainant, as also that due the bank as aforesaid.

On the 19th September, 1846, on the report of the Master, that there was due complainant on his note and mortgage, $753.01, and to the bank aforesaid on the said judgment against Bell and Harris, which was had on said notes secured by said mortgage of Bell and Harris, $317.72, — It is ordered and decreed that Galloway pay the said several sums as due, and the costs of this suit, and that thereupon satisfaction be entered on said mortgages, &c.; but in default of his so doing, that the equity of redemption to said land be barred, &c., they sold; that a commissioner named sell them as directed; and out of proceeds he first purchase certificates, &c., and discharge the debt due the

Bonham *v.* Galloway et al.

State Bank as aforesaid, and that he then pay the complainant's debt, &c., and report, &c.

Complainant, who is plaintiff in error, assigns for error:

1st. The court below erred in treating the said mortgage from the said Galloway to the said Mahon and assigned to the said defendants Harris and Bell, as valid, and as a prior incumbrance on the said mortgaged premises; but should have regarded the same as discharged and satisfied before such assignment.

2d. The court below further erred in considering the condition of the said assigned mortgage as broken, and in ordering an account to be taken by the Master in Chancery to ascertain and report the amount due to the president, directors, and company of the State Bank of Illinois, and in regarding such debt as a prior charge on the premises mortgaged to complainant.

3d. The court below further erred, on the final hearing of this cause, in the absence of any proof that defendants Harris and Bell had paid the debt due to the State Bank of Illinois, as securities for said Galloway, in taking into consideration the amount of such debt.

4th. The court below further erred in making the payment of the debt due by Galloway to the State Bank any part of the condition upon which the relief sought by complainant should be granted, and in treating the said mortgage to Mahon as a security to said Bell and Harris, and as charging the said mortgaged premises to the extent of the satisfaction of the judgment against them on said note to said State Bank.

5th. The court erred further in decreeing that the commissioner should, out of the proceeds of the sale of the said mortgaged premises, first purchase certificates of the State Bank of Illinois, and pay off and discharge the amount due to said president, directors, and company of the State Bank of Illinois, with interest up to date of said decree; and next, to pay over to complainant Bonham, the amount, &c. due on his said security, with costs, &c.

6th. The court below further erred in rendering any decree other than such as would have given to Bonham the relief prayed, and subject the said mortgaged premises to the full discharge of the debt reported by the Master in Chancery as due to Bonham on the security thereof.

The decree was rendered at September term, 1846, of the Wabash Circuit Court, WILSON, Justice, presiding.

C. CONSTABLE, for plaintiff in error.

J. GILLESPIE, for defendants in error.

TRUMBULL, J. This was a proceeding in chancery to foreclose a mortgage executed to the complainant by the defendant Galloway in May, 1840. The bill is in the usual form as against Galloway, and makes Mahon, Bell, and Harris defendants, as claiming some rights under a mortgage of the same premises executed by Galloway to Mahon prior to the one executed to the complainant, which mortgage was subsequently assigned by Mahon to Bell and Harris, but which complainant insists is discharged as to him. The bill was taken for confessed against Galloway and Mahon. Bell filed an answer, which, by agreement, was taken as the answer of Harris also. Without denying complainant's rights under his mortgage, the answer sets up as valid the mortgage to Mahon, the condition of which is, " that if the said Galloway do well and truly, without defalcation, content, pay, satisfy, and discharge a promissory note of hand given by him and the said James Mahon, on the 26th day of February, A. D. 1840, to the president, directors, and company of the State Bank of Illinois, at their branch in Mount Carmel; that is to say for the sum of four hundred dollars, payable seven months after date, either by renewals or otherwise, so as to save the said Mahon harmless from paying said note or any part thereof, or any interest or cost accruing thereon, it being understood and agreed by and between the parties, that if the said Andrew J. Galloway shall well and truly discharge said note agreeable to the true intent and meaning of the same, that then this indenture and every part thereof is to be null and void, otherwise to remain in full force and virtue." The answer further alleges that Galloway did not pay the note to the bank; that Mahon, being desirous of being relieved from his liability as security for Galloway, the latter applied to the defendants Bell, Harris, and one Armstrong to become his securities, in the

Bonham *v.* Galloway et al.

place of said Mahon, and renew his note to the bank, which they agreed to do on being made safe by a transfer of the mortgage to Mahon, to them; that they did accordingly become his securities, and renewed said note to the bank in the place of Mahon, who, in consideration thereof, on the 3d day of October, 1840, assigned said mortgage to them, the said Harris, Bell, and Armstrong; that said Galloway had not discharged his debt to the bank, but that a large sum still remained due, for which judgment had been obtained against the said Harris and Bell; wherefore it was insisted that the court should respect the prior lien of the mortgage to Mahon in any disposition to be made of the mortgaged premises, and that the debt due the bank should first be paid out of the same.

The case was heard upon bill, answer, and exhibits, and a decree entered requiring the said Galloway to pay the amount found to be due upon said mortgages in twenty days, or, in default thereof, directing a sale of the mortgaged premises, and the application of the proceeds, first to the payment of the debt due the bank, and then in satisfaction of complainant's claim.

That part of the decree foreclosing the mortgage to Mahon, and ascertaining the amount due the bank and directing its payment, is clearly erroneous. The bank was not a party to the proceeding, and would not be bound by the decree entered; and the defendants Bell and Harris had no right to proceed against Galloway till they had paid or discharged the debt for which they were his sureties.

The cause of action against the principal debtor in favor of the surety, accrues when the surety pays the debt, not before. Shepard *v.* Ogden, 2 Scam. 257.

The proper decree upon the assumption that the mortgage to Mahon was still in force, would have been to direct a sale of the premises subject to the lien of that mortgage.

These, however, are questions of minor importance, not affecting the real merits of the case, and which could be avoided in subsequent proceedings; but the great point in controversy is, whether the mortgage to Mahon was not discharged, when the note for which he was security was taken up, and he released from further liability.

The mortgage was not given to the bank as a security for the debt owed by Galloway, but to Mahon, to indemnify him in case he should have to pay any part of that debt as Galloway's security. The language of the mortgage is peculiar; it was to be void in case Galloway should pay and satisfy his note to the bank, either by renewals or otherwise, so as to save the said Mahon harmless from having to pay the same. By the terms of the mortgage, it was clearly discharged the moment Mahon was released from his liability as a security on the note to the bank, and a new note given with different securities.

When the old note was taken up, and the renewed one substituted in its place, the mortgage ceased to be operative. Mahon had then been saved harmless, and discharged from all further liability, and the object for which the mortgage was given had been fully accomplished. It was not competent for him, at that time, after the rights of the complainant had intervened, to continue the mortgage in force by transferring it to other persons who had become sureties in his stead. It was Galloway, not Mahon, who applied to Bell, Harris, and Armstrong, to go his security upon the renewed note; and it was between these parties that the agreement was made for the transfer of the mortgage by Mahon. Galloway could not at that time have executed a new mortgage which would have had precedence over the previous one to the complainant; and if he could not thus directly give his new securities a preference over the complainant, could he accomplish the same thing by getting Mahon to transfer to them a mortgage which had ceased to be operative, by the very fact of Galloway renewing his note to the bank, so as to discharge Mahon from further liability?

That Galloway and Mahon, at the time the mortgage was executed, did not contemplate its subsequent transfer as an indemnity to such persons as might afterwards become Galloway's security upon a renewal of his note to the bank, is manifest from the language of the condition of the mortgage; and it was too late, after the rights of a third person had intervened, to change the original intent, design, and meaning of the mortgage to his prejudice.

Bonham *v.* Galloway et al.

We are aware of decisions to the effect that a surety on a note having a mortgage of indemnity, does not lose the benefit of his mortgage by renewing the note with his principal. Pond *v.* Clark, 14 Conn. 335; Brinkerhoof *v.* Lansing, 4 Johns. Ch. R. 73; Pomeroy *v.* Rice, 16 Pick. 22. Though a contrary doctrine was formerly held in Connecticut. Peters *v.* Goodrich, 3 Conn. 146. We know of no case, however, where a mortgage of this character has been held to be operative in favor of third persons who have been substituted as securities upon the renewed note, in the place of the original indorser and mortgagee, so as to overreach the rights of intervening creditors and purchasers of the mortgagor.

In the case of Pond *v.* Clark, overruling the decision in the third of Connecticut, the Court say in their opinion, that had the indorser on the substituted note made his indorsement, at the request and upon the credit of new parties, the damage he finally sustained would not have been the consequence of his original indorsement, and would not entitle him to look to the mortgage for indemnity.

Mahon had no assignable interest in the mortgage at the time of the transfer, certainly no such interest, as against an intervening incumbrancer upon the same premises, and consequently the assignees took nothing by the assignment.

As the case will have to be remanded, it is proper to remark, that the transfer of the mortgage is to Harris, Bell, and one Armstrong, the last of whom, without any reason therefor appearing on the record, is omitted to be made a party. The same reason exists for making him a party as the other assignees, and the decree of the Circuit Court will be reversed, and the cause remanded, with leave to the complainant to amend his bill in this respect, if he shall be so advised, and with directions to the Circuit Court to take such further proceedings in the case, as to law and justice appertain; and as are not inconsistent with this opinion.

*Decree reversed.*