## BROOKS *vs.* RUFF.

[TROVER FOR CONVERSION OF HORSE.]

1. *Extinguishment and subsequent assignment of mortgage.*—Where the condition of a mortgage is, that the mortgagor shall save harmless the mortgagee against liability as his surety on a note due to a third person, the condition is performed, when the mortgagor procures the cancellation of the note, and the substitution of a new note in its stead, with a different surety; and the mortgage being thereby extinguished, it cannot then be assigned to the surety on the new note, for his indemnification, even though the assignment be made with the assent of the mortgagor, for valuable consideration, and contemporaneously with the cancellation and substitution of the notes.

2. *Parol mortgage.*—A mortgage of personal property, given to indemnify the mortgagee against liability on a note as surety for the mortgagor, being afterwards extinguished by the cancellation of the note, and the substitution of a new note in its stead, with a different surety; a verbal agreement between the mortgagor, the mortgagee, and the surety on the new note, made contemporaneously with the cancellation and substitution of the notes, to the effect that the mortgage shall stand as a security for the surety, constitutes a valid mortgage as between the parties.

APPEAL from the Circuit Court of Lowndes.

Tried before the Hon. NAT. COOK.

THIS action was brought by Ransom C. Ruff, against Andrew J. Brooks, to recover damages for the conversion of a horse; and was commenced on the 2d September, 1858. The plaintiff claimed the horse under a mortgage from one S. P. Brownlie, and the defendant held him under a purchase from said Brownlie. It appeared that Brownlie, in April, 1855, executed a mortgage on the horse, with other property, to one Samuel Ivey; the condition of which was, that he should "save the said Ivey harmless" against liability on a promissory note for $500, payable to Randall Cheek, and due the 1st January, 1856, which said Ivey had signed as the surety of said Brownlie; and this mortgage was duly proved and recorded. Ivey became uneasy about his liability on the note, and sent an agent to Brownlie, proposing to make some new arrangement about the matter. Brownlie offered to let him have a negro woman and child, at the price of $1250, which Ivey was willing to give; but the title to the negroes was in Ruff, the plaintiff, who was not willing to let Ivey have them at that price, but said that he preferred to take them himself. Ivey then insisting that he should be released from liability on the debt to Cheek, "it was agreed among them, that Ivey should be released, that Ruff should become bound to Cheek for the debt, and that Ivey should assign the mortgage to Ruff. Brownlie, Ivey and Ruff assented to this; and Cheek being willing to take Ruff instead of Ivey, the papers were executed in pursuance of this agreement." Ivey's note to Cheek was then delivered up to him; a bill of exchange, in lieu of it, was drawn by Ruff, and endorsed by Brownlie; and Ivey endorsed on the mortgage an assignment in the following words: "For value received, I hereby transfer this mortgage, with all the rights which it secures to me as S. P. Brownlie's security, as therein specified, to Ransom C. Ruff, of said county and State. In witness whereof," &c. These transactions were had on the 5th January, 1856, as shown by the date of the assignment. The record does not state any of the facts connected with the defendant's purchase of the horse. The bill of exchange was paid at maturity, by Ruff.

"The court charged the jury, that if they believed, from the evidence, that Ivey, the mortgagee, assigned the mortgage to plaintiff, with the assent of Brownlie, and because plaintiff had agreed to become bound to Cheek in the place of Ivey, and that he did become so bound, then the consideration for the assignment of the mortgage was good and valid, and the assignment passed to plaintiff all the rights and equities of Ivey; and if they further believed, from the evidence, that plaintiff afterwards paid the debt to Cheek, then, so soon as he did this, he had a right to the possession of the horse mortgaged; and that if the proof showed that plaintiff had paid Cheek before suit brought, and that the defendant had the horse in his possession after this payment, and refused to deliver him, the plaintiff was entitled to recover." This charge, to which the defendant excepted, is now assigned as error.

CLEMENTS & WILLIAMSON, for the appellant.—The cancellation of the note on which Ivey was bound, and the substitution of the bill of exchange by Ruff, extinguished the mortgage; and Ivey's assignment thereof, even if founded on valuable consideration, passed no interest to plaintiff.—*Bonham v. Galloway*, 13 Ill. 68; *Abbot v. Upton*, 19 Pick. 434; *Mead v. York*, 2 Selden, 451; *Sumner v. Bachelder*, 30 Maine, 35.

THOS. WILLIAMS, *contra.*—The assignment of the mortgage was contemporaneous with the cancellation of the note and the substitution of the bill of exchange, and was for valuable consideration; and the mortgagor was a party to the agreement. All the elements of a valid contract are shown; and the defendant is not in a position to impeach it, as he does not show how or when his rights accrued.

A. J. WALKER, C. J.—The mortgage in this case was an assignment, upon a specified condition; and upon the performance of the condition, the mortgage was extinguished, and the title revested in the mortgagor. This

proposition necessarily results from the fact, that the mortgage is but a security for the discharge of a particular debt or duty ; and it is well recognized in the law-books.—1 Hilliard on Mort. 447 ; *Gunn v. Young,* 2 St. & P. 160 ; *Deshaza v. Lewis,* 5 St. & P. 91. The condition of the mortgage was, to save harmless the surety of the mortgagor. This the mortgagor unquestionably did, when he obtained a cancellation of the note, upon which the mortgagee was his surety, and substituted a bill of exchange, with a different surety, and obtained a discharge of the mortgagee. The mortgage was thus extinguished ; and being extinguished, the assignment of it could not resuscitate it, although the assignment might be upon a valuable consideration. The cases of *Bonham v. Galloway,* (13 Ill. 68,) *Mead v. York,* (2 Selden, 449,) *Abbott v. Upton,* (19 Pick. 434,) cited upon the brief of appellant's counsel, conclusively support that position.—See, also, 1 Hilliard on Mort. 461–2 ; *Sumner v. Bachelder,* 30 Maine, 35. Even the consent of the mortgagor, that the mortgage should be assigned, could not, of itself, revive it. The charge given by the court was erroneous, because it predicated the plaintiff's right of recovery upon the assignment, for a valuable consideration, of an extinguished mortgage, with the consent of the mortgagor.

[2] We see no reason why a mortgage of personalty, valid *inter partes,* may not be made by verbal contract. 2 Hilliard on Mort. 520 ; *Morrow v. Turney,* 35 Ala. 136. Such a mortgage would, by virtue of our registration statute, be void "as to purchasers for a valuable consideration, mortgagees, and judgment creditors without notice" (Code, § 1288) ; but we think it would be valid as to the parties, and others not protected by that statute. The evidence conduces to show, that there was a verbal agreement, that the mortgage should stand as a security to the plaintiff. This agreement, if it existed, would amount to a verbal mortgage in favor of the plaintiff, and would avail against the defendant, unless he could show that he was one of the persons protected by the registration law, or

unless his interest accrued before the making of the verbal mortgage. The evidence does not show that the defendant is one of those persons.

What we have already said will, probably, be sufficient to guide the court upon a future trial, and we need not consider farther the questions presented.

Reversed and remanded.