## MORROW *vs.* TURNEY'S ADM'R.

| 35 | 131 |
| 134 | 599 |

[BILL IN EQUITY FOR FORECLOSURE OF MORTGAGE.]

1. *Validity of parol mortgage.*—In this State, an equitable mortgage on slaves may be created by a verbal agreement; and a verbal agreement to give a mortgage, founded on the consideration of a debt contracted on the faith of it, will be upheld and enforced as a mortgage in equity, as between the parties and their representatives, on the principle that equity will consider that as done which ought to have been done.

2. *What constitutes mortgage.*—A contract, by which it was agreed between M. and T. that, if the latter would advance a specified sum of money to redeem M.'s negroes from an incumbrance, " the said negroes should become his property, subject to the right of the said T. to redeem them within a short space of time on the repayment of the money so advanced, with interest thereon ;" and under which the money was advanced by T.,—held a mortgage, and not a conditional sale.

3. *Delivery not essential to validity of parol mortgage.*—In this State, delivery of possession is not, as between the parties, essential to the validity of a parol mortgage of personalty.

4. *Variance.*—Under a bill to foreclose a mortgage, alleged to have been created by verbal contract, and to have been intended to secure two distinct debts, if the proof shows that only one of the debts was in fact secured, the variance is not fatal.

5. *Mortgagee's liability for interest on annual hire of slaves.*—A mortgagee in possession, seeking a foreclosure of his mortgage on slaves, is chargeable with

interest on the annual hire of the slaves from the end of each year after his possession commenced.

6. *His liability for annual taxes.*—But the mortgagee is not, in such case, liable to pay the annual taxes on the slaves, which are a charge on the property.

7. *His liability for loss of property.*—Where no fraud or negligence is proved against the mortgagee, he is not responsible for the value of one of the mortgaged slaves who died in his possession.

8. *Annual rests.*—In taking the account against a mortgagee, who obtained possession in a legitimate way, annual rests ought not, in general, to be made against him ; especially where the mortgagor is largely in arrears, and similar rests are not made against him.

APPEAL from the Chancery Court of Morgan.

Heard before the Hon. JOHN FOSTER.

THE bill in this case was filed by George B. Turney, as the administrator of Daniel Turney, deceased, against Hugh D. Morrow, for the purpose of foreclosing an equitable mortgage on slaves. The facts and circumstances alleged in the bill, as connected with the creation of the mortgage, are briefly these : On the 4th May, 1850, the sheriff of Morgan county sold certain negroes, to-wit, a woman named Rose, and her four children, under execution against Hugh D. Morrow. One Burleson became the purchaser at the sale, and received the sheriff's deed for the slaves, but agreed to let Morrow redeem them, at any time prior to the 1st March, 1851, on the payment of $850; and the negroes were allowed to remain in Morrow's possession under this agreement. At this time Morrow was indebted beyond his ability to pay, and owed complainant's intestate about $1,300, the balance due on two notes executed by the late mercantile firm of Morrow & Perry, of which firm said Morrow was a partner. " In January or February, 1851, the said Hugh D. Morrow applied to the said Daniel Turney to redeem said slaves, and the said Daniel, some short time before the 1st March, 1851, agreed to redeem and purchase said slaves, as hereinafter stated. The said Hugh D., not being able to procure any one else to advance money to redeem said slaves, finally agreed with said Daniel, that if he would advance the sum of $850, the old debt of Morrow & Perry, above described, should also be settled. Accordingly, they

agreed that it should come in; and the said Daniel consented to deduct from the sum due on the old debt, so as to reduce the same to $750, and to advance $850 in money to redeem said slaves. It was then agreed between the said Daniel and Hugh D., that if the said Daniel would advance the said sum of $850, and deliver up the said notes of Morrow & Perry, estimating them at $750, the said negroes should become the property of the said Daniel, subject to the right of the said Hugh D. to redeem them, on the repayment to said Daniel of $1,600 with interest thereon, within a short space of time, which has long since elapsed; and the said Daniel was to have the right to the possession at any time called for."

The bill further alleged, that the complainant's intestate advanced the sum of $850 to Morrow under this agreement, and delivered up to him the two notes of Morrow & Perry, but took no note or bond from him for the repayment of the money; that with the money thus advanced the negroes were redeemed from Burleson, who assigned his sheriff's deed to complainant's intestate; that Morrow retained the possession of the slaves, in trust for complainant's intestate, during the life-time of the latter, and did not assert any right or title in himself during that time; that complainant, after the death of his intestate, demanded the possession of the negroes, or the repayment of the said $1,600, but Morrow refused to comply with either demand; that he then instituted an action of detinue to recover the slaves, and obtained possession of them by executing the usual statutory bond; that his suit was dismissed in April, 1852, and judgment for costs was rendered against him; that Morrow was insolvent; and that the slaves were worth, when the bill was filed, (31st January, 1855,) about $2,600. The bill prayed an injunction of legal proceedings on the detinue bond, an account of the mortgage debt, a sale of the slaves in the event the defendant failed to pay the balance against him, and general relief.

The defendant answered the bill, admitting the sale of his negroes under execution, the purchase of them by Burleson, and Burleson's agreement that he might redeem

them.   He further admitted, that in a conversation be-
tween himself and complainant's intestate, in January,
1851, a verbal agreement was made corresponding with
that alleged in the bill; but he denied that any money
was advanced under that agreement, and insisted that it
"was without consideration on either side, and neither
party was bound to comply with it, except as he might
voluntarily choose to do so." He alleged that, in February,
1851, after the above agreement was made, he obtained
money from another source, with which he paid off the
old debt of Morrow & Perry, " so that there was no longer
any necessity for securing it;" and that on the 1st March,
1851, complainant's intestate did advance $850 to him,
under the following agreement: " On or about the 1st
March, 1851, said Daniel Turney advanced or loaned to
this respondent $850, which was thereupon paid to said
Burleson, to aid in the redemption of said slaves; but
this was done upon the understanding between said Dan-
iel and this defendant, that upon the advancement of said
sum of money, and the redemption of said slaves, this
defendant was to give said Daniel a lien on said slaves to
secure the repayment of the sum so advanced."

The chancellor overruled a motion to dismiss the bill
for want of equity, and, on final hearing on pleadings and
proof, rendered a decree for the complainant; establishing
a mortgage on the slaves for the $850 advanced by the
intestate, and ordering a reference to the master of the
matters of account. On the taking of the account before
the master, exceptions were reserved by each party; and
the rulings of the chancellor on these exceptions, together
with the overruling of the motion to dismiss the bill for
want of equity, and the final decree in favor of the com-
plainant, are now assigned as error.

THOS. M. PETERS, for appellant.—1. The chancellor's
decree is predicated on the idea, that the intestate had a
verbal mortgage on the slaves; but this is neither averred
nor proved, and, if it were, would not be sufficient; be-
cause, at common law, there was no such thing as a mort-
gage without writing; and if there was no mortgage,

there is no equity.—Turney's Adm'r v. Morrow, 26 Ala. 339; Hebron v. Centre Harbor, 11 N. H. 51; Bowers v. Oyster, 3 Penn. 239; Wilkins v. Wilkins, 4 Porter, 246; Singleton v. Gayle, 8 Porter, 270. Moreover, delivery, actual or symbolical, is essential to the validity of such verbal mortgage; and no delivery is here averred or proved.—Goodnow v. Dunn, 8 Shep. 86; Portland Bank v. Stubbs, 6 Mass. 425; 14 Mass. 352; 15 Mass. 477; 1 Pick. 389; 16 Pick. 33; 15 Wendell, 212, 244; 1 Penn. 57; 5 Serg. & R. 275.

2. A mortgage is a conveyance by way of pledge for the security of a debt, with the right of redemption in the mortgagor. The debt is the principal, and the mortgage but an incident. Here, no debt is alleged to be due and owing; and, consequently, there is no mortgage.— 4 Kent's Com. § 58, p. 135; 26 Ala. 339; 28 Ala. 226; 27 Ala. 542, 634; 12 Ala. 678; 4 Porter, 246; 8 Porter, 270.

3. The proof does not sustain the allegations of the bill.—19 Ala. 297, 259, 398; 28 Ala. 374, 613; 29 Ala 267, 337; 27 Ala. 193, 598; 20 Ala. 753; 23 Ala. 669; 24 Ala. 285; 22 Ala. 106, 132, 602; 3 Ala. 421; 4 Ala. 60; 7 Ala. 823; 8 Porter, 211.

4. The complainant's first exception to the master's report ought not to have been sustained. The annual hire of the slaves became a debt at the end of each year after its accrual, and interest followed as an incident to the debt.—26 Ala. 152; 23 Ala. 296; 22 Ala. 343.

5. The complainant took possession before foreclosure, before the law-day had elapsed, and before any right had accrued to him. His possession was, therefore, wrongful, and he is liable to account like any other wrong-doer, without deductions for expenses. Besides, the proof does not show that he paid the taxes claimed.—5 Paige, 9; 23 Ala. 345.

6. The defendant's first exception to the report should have been sustained. The complainant was entitled to no indulgence, because his possession commenced and continued in wrong and violence. The defendant might have hired out his slaves, so as to make the annual hire due at

the end of each year, and bear interest from that time; and he should have been allowed the benefit of this before the master.

7. Unless it is otherwise agreed, the annual hire ought to be so applied as to keep down the interest on the mortgage debt.—3 Beavan, 136; 2 B. Monroe, 61.

8. The death of the slave Rose did not exonerate complainant from liability for her value, nor from accounting for her hire after her death.—23 Ala. 127; 5 Stew. & P. 123; 8 Porter, 564; 7 Ala. 807.

A. J. WALKER, C. J.—The bill of complainant seeks to foreclose an equitable mortgage on slaves, claimed to have been created by a verbal agreement. One of the appellant's positions, in opposition to the equity of the bill, is, that a mortgage of personalty cannot exist in this State, except by virtue of an instrument in writing. We have no statute in this State, which requires that such mortgages should be in writing; and that they may be made without writing under the common law, seems a necessary result of the established principle, that in the absence of any statutory requirement to the contrary, a conveyance of personalty may be without writing. In the cases of May v. Eastin, 2 Porter, 422, and Deshazo v. Lewis, 5 St. & Por. 94, this court distinctly recognized the validity of unwritten mortgages of personalty; and in Coster v. Bank of Georgia, 24 Ala. 59–60, it seems to have gone still farther, and conceded to a parol agreement to give a mortgage, upon which money was advanced, the effect of a mortgage upon an estate consisting both of realty and personalty; but the question of the statute of frauds is not shown by the record to have been pleaded, and was not noticed by the court.

The point arose in the court of appeals of New York, and the necessity of a writing to the validity of a mortgage of goods and chattels was distinctly denied.—Bank of Rochester v. Jones, 4 Comstock, 506. Of course, in all of the cases, the *contestatio litis* was between the parties to the mortgage; and such is the case here. The case of Bowers v. Oyster, 3 Penn. (Penrose & Watts,) 239, cited

on the brief of appellant's counsel, was in reference to a mortgage of land, and was decided upon the Pennsylvania statutes. The case of Hebron v. Centre Harbor, 11 N. H., does not touch the question in hand. Powell, in his work on mortgages, affirms that parol agreements for mortgages of lands are void; but it is so affirmed upon the statute of 29th Charles II, which required conveyances of land to be in writing.—3 Powell on Mort. 1050 *a*, 1050 *b*.

The bill shows that there was an agreement; and if it was an agreement to give a mortgage, predicated upon the consideration of a debt contracted on the faith of the agreement, it will be upheld and enforced, between the parties and their representatives, as a mortgage, upon the principle, that equity will consider that as done which ought to have been done.—Coster v. Bank of Georgia, *supra;* 1 Story's Eq. Jur. § 64 *g* ; Read v. Gaillard, 2 Dess. 552.

[2.] But it is contended, that the bill does not show an agreement to give a mortgage, because there was no debt remaining to be secured by the mortgage. It is averred, that the defendant was under the necessity of procuring eight hundred and fifty dollars, to enable him to redeem the property by a specified day from an incumbrance that was upon it. The bill then states an agreement by the defendant, that if the plaintiff's intestate would make such a deduction from an old debt due to him as would reduce it to $750, and deliver up the note and bond which evidenced the debt, and advance the required sum of $850, then the negroes should become the property of the plaintiff's intestate, subject to the defendant's right to redeem within a short space of time. The bill then states a performance of that agreement on the part of the plaintiff's intestate. The parties certainly meant, by an *advance* of money, a loan. It was either a loan, or a payment. The import of the word "*advance*" is such as rather to indicate that there was a loan, than a payment of purchase-money. The question is, mortgage or conditional sale; and without arguing the point, we refer to several decisions of this court, which show that the transaction described by the bill amounted to a mortgage.

10

Crews v. Threadgill, at present term; Lock v. Palmer, 26 Ala. 312; Cunningham v. Turnipseed, 16 Ala. 501; May v. Eastin, *supra;* Eiland v. Radford, 7 Ala. 724; Flagg v. Mann, 2 Sum. 486.

[3.] The argument, that delivery is indispensable to the validity of a verbal mortgage, cannot receive our approval. There is a distinction in that particular between mortgages and pledges. There is no distinction, and no reason for a distinction, between verbal and written mortgages. In Massachusetts, the court, apparently unmindful of the distinction between pledges and mortgages, seems to have regarded delivery as an indispensable ingredient of every mortgage, even when written, of personal property. Portland Bank v. Stubbs, 6 Mass. 422; Gale v. Ward, 24 Mass. 352; Tucker v. Buffington, 15 Mass. 477; Badlam v. Tucker, 1 Pick. 389; Bonsey v. Amee, 8 Pick. 236. But these decisions, as to that point, have not been approved or followed.—2 Hilliard on Mortgages, 519; Goodenow v. Dunn, 21 Maine, (8 Shep.) 86. The cases, other than those of Massachusetts, to which appellant's counsel refers in support of his argument, pertain only to the question of fraud, as affected by non-delivery and the want of possession in the mortgagee.—Murray v. Burtis, 15 Wend. 212; Look v. Comstock, *ib.* 244; Clow v. Woods, 5 S. & R. 275; Welsh v. Beekey, 1 Penn. (Pen. & Watts,) 57. In our State, the validity of mortgages of personalty, *inter partes,* although not accompanied by possession, is fully recognized.—Killough v. Steele, 1 St. & P. 262; Ross v. Ross, 21 Ala. 322; P. & M. Bank v. Willis, 5 Ala. 770; Mauldin v. Terrell & Mitchell, 14 *ib.* 814; Magee v. Carpenter, 4 Ala. 469; see, also, Brownwell v. Hawkins, 4 Barb. 491; 2 Hill. on Mort. 519, § 2.

The bill avers the expiration of the "short time" allowed for the redemption by the defendant. That the law-day was passed before the commencement of this suit, is thus clearly shown.

We decide that the complainant's bill contained equity, and the chancellor did not err in overruling the motion to dismiss.

[4.] The answer distinctly admits all that is necessary to constitute an equitable mortgage for the $850 advanced by the complainant's intestate.   The bill claims that the mortgage was designed to secure another debt of $750. The chancellor granted the complainant relief as to the $850, but declined to grant any relief as to the other alleged debt; because it is denied to have existed or been secured by the mortgage, and the chancellor was of the opinion that the proof did not sustain the bill in that particular.   The question arises, whether there is a fatal variance between the *allegata* and *probata*, because it appeared on the hearing that only one of the two debts alleged in the bill was secured by the mortgage.   The variance was such as affected only the measure of the plaintiff's recovery, and not either the character of relief, or the right to it.   It therefore falls within the principle settled in Gilchrist v. Gilmer, 9 Ala. 985, and is not fatal. McLane v. Riddle, 19 Ala. 180; Montgomery v. Givhan, 24 Ala. 586; Barnes v. Williams, 28 Ala. 613.

The complainant's relief, to the extent allowed by the chancellor, does not depend in the slightest degree upon the deposition of Clarkson.   Its suppression would not have changed the result; and there was, therefore, no injury to the appellant from the failure to suppress it, and there can be no reversal for such failure.

[5.] The chancellor erred in sustaining the complainant's first exception to the register's report.   By the sustaining of that exception, the mortgagee was relieved from a charge of interest on the annual hire of the slaves, from the end of each year after he went into possession. The result thus attained was, that the mortgagee received interest upon his debt, and enjoyed the annual profits of the mortgagor's slaves, without accountability for interest. This ruling is supposed to have been made on the authority of Hogan v. Stone, 1 Ala. 496.   But that decision is pronounced in reference to a case where, in the language of the decision, "the defendant was in possession under a purchase, and [was] only a constructive mortgagee in possession;" and where, besides, the rents and profits largely exceeded the debt and interest, and the attempt was to swell the bal-

ance against the mortgagee by a charge of interest. That decision seems to have been chiefly placed upon the authority of Breckenridge v. Brooks, 2 A. K. Marsh. 341, in which the rents were credited as they were received upon the debt; and the court decided, that the mortgagee was not chargeable with interest upon the rents received after the discharge of the mortgage debt. Whether we would follow those decisions, in a case of like features, we will not now decide; but we cannot, upon them, sustain the chancellor's ruling, without doing greater violence to the authorities, English and American, and to justice, than our sense of judicial propriety will permit. We cite the authorities, which fully sustain the charge of interest. Shephard v. Elliot, 4 Madd. 254; Wolcott v. Sullivan, 1 Edw. Ch. 405; Quarrell v. Beckford, 1 Madd. 269; 3 Powell on Mort. 957 *b*, notes; 1 Hilliard on Mort. 420; Saunders v. Frost, 5 Pick. 270.

[6.] The annual taxes was a charge upon the slaves, for the payment of which the chancellor, by sustaining the complainant's second exception to the register's report, gave the mortgagee the benefit.—4 Kent's Com. 188 (m.) 166; 1 Hill. on Mort. 420, § 9.

[7.] The mortgagee was not accountable for the value of the slave which died in his possession, and all liability for her terminated by her death, there being no proof of fraud or negligence.—4 Kent's Com. *supra.*

[8.] It is not an invariable rule to make annual rests in taking the account against the mortgagee, and in a case where, as in this, the mortgagor was largely in arrear, and the mortgagee obtained possession in a legitimate way, such rests ought not, in general, to be made against him; certainly not unless a like course was pursued in reference to the other side, in which event the appellee would be the loser by making the rests, as his side of the account is much the larger.—3 Powell on Mort., *supra.*

We have carefully examined the testimony before the register; and we are not convinced that the register has erred in his estimate of the hire, to the prejudice of the

appellant; and we approve the action of the chancellor in refusing to disturb the estimates reported by him.

We do not think that any of the exceptions to the register's report, except as to the interest, ought to have been sustained; and the chancellor was manifestly right in perpetuating the injunction.

The interest on the annual hire was correctly calculated by the register, from the end of each year, beginning with the commencement of the mortgagee's possession.

The decree of the chancellor is reversed, for the single error as to the interest on the annual hires, and remanded for the single purpose of allowing the chancellor to correct his decree in that particular. The appellee must pay the costs of this appeal.