# Stearns *v.* Gafford.

### *Statutory Action of Detinue for Cotton.*

1. *Parol mortgage of crop.*—A valid mortgage of a growing crop, or a crop to be planted, may be made by parol; and a verbal agreement to pay an existing debt and supplies to be furnished during the year, "out of the first cotton that may be gathered," is sufficiently definite and specific in the description of the property.

APPEAL from the Circuit Court of Butler.

Tried before the Hon. JOHN K. HENRY.

This action was brought by John D. Stearns, against J. D. Gafford, to recover a bale of cotton, with damages for its detention; and was commenced on the 14th November, 1870. The defendant pleaded the "general issue, in short by consent, with leave to give in evidence any matter that might be specially pleaded;" and issue was joined on that plea. "On the trial," as the bill of exceptions states, "the plaintiff's evidence showed, that one Turner worked on plaintiff's farm in the year 1870; plaintiff furnishing the land, stock, farming utensils, and feed for plow stock; Turner finding his own provisions, and laboring on the farm; and that each was to have one-half of what was raised on the land during said year. The cotton sued for was shown to be part of that grown on said farm under said contract, and a part of the first gathered. Plaintiff's proof tended to show, that said Turner had delivered and turned over said bale of cotton to plaintiff, as part of his (plaintiff's) share of said crop, and that said cotton remained in plaintiff's possession, at his gin-house, after such delivery, until it was taken off by the defendant; but, as to whether there had been such delivery, there was a conflict in the evidence. Defendant's evidence tended to show, that he had induced said Turner, then in his employment, to make the above stated contract with plaintiff, to labor on his farm in the year 1870; that said Turner, when plaintiff hired him, was indebted to defendant in the sum of sixty dollars; and that when the contract was made, by virtue of which said Turner left defendant's service and began with plaintiff, the plaintiff promised defendant, as did also Turner, they all three being present, that the sixty dollars which Turner then owed him should be paid out of the first cotton that should be gathered, of that to be made by

said Turner on plaintiff's said farm; but, as to whether said agreement to pay out of said cotton was made, there was a conflict in the evidence. The proof showed, also, that Turner went with defendant to plaintiff's gin-house, and there delivered said bale of cotton to defendant; but this delivery was made after the time when, as plaintiff's evidence tended to show, it was delivered by said Turner to plaintiff; as to which said delivery to plaintiff, as above stated, there was a conflict in the evidence. The evidence showed, also, that none of these contracts was in writing; also, that said Turner made, during said year, 1870, three or more bales of cotton on said place. Defendant's evidence further tended to show, that plaintiff and said Turner had, when the original contract was made between them, also promised that defendant should be paid out of the first cotton made by Turner, for all the supplies defendant should furnish him; that defendant did furnish supplies to said Turner, under said contract, to the amount of forty dollars, and had not received pay therefor.

"This being the state of the evidence on that point, the court charged the jury, that if they believed, from the evidence, that when Turner left the defendant's service, and made the contract to labor with plaintiff, both Turner and plaintiff promised and agreed with defendant that he should be paid, out of the first cotton to be made during the year 1870, the amount of sixty dollars then due to him by said Turner, and such further sum as defendant should advance as plantation supplies to Turner during that year; and that defendant had, in good faith, advanced to Turner, under said contract, supplies to the amount of forty dollars; and that Turner had delivered said bale of cotton to defendant in good faith, in order to comply with said contract; and that defendant had never otherwise been paid said sum so due him; then plaintiff could not recover in this suit." This charge, to which the plaintiff excepted, is the only matter now assigned as error.

HERBERT & BUELL, for appellant.

GAMBLE & BOLLING, contra.

STONE, J.—A mortgage may be made of a crop afterwards to be planted; and such mortgage, being of personalty, may be made without writing.—2 Brick. Dig. 248, §§ 5, 9, 11; *Booker v. Jones*, at present term; *Morrow v. Turney*, 35 Ala. 131; *Brooks v. Ruff*, 37 Ala. 371.

What precise words are required to constitute a mortgage,

can not be absolutely affirmed. There must be a debt, legal liability, or obligation, actually existing, or, at the time, proposed to be incurred, and afterwards actually incurred, or there can be no valid mortgage. But, when there is such debt, legal liability, or obligation, then any agreement or language, by which property is sufficiently identified, and designated as a security for its payment, will amount to a mortgage. Security is the aim, the essence of a mortgage; and when property is sufficiently described, set apart, and charged by contract with the burden of a debt, this contains all the essential elements of a valid mortgage.—See 1 Hilliard on Mortgages, 2, 4; *Jewett v. Warren*, 12 Mass. 300; *Howes v. Crane*, 2 Pick. 607. Any conveyance, "intended by the parties, at the time of making it, to be a security for the payment of money, or the doing of some prescribed act," is a mortgage.—2 Wash. Real Prop. 43–47.

In the case of *Robinson v. Mauldin, Montague & Co.*, 11 Ala. 977, the grantor, who was a planter, was indebted to his commission merchants, and, to secure them, conveyed to a trustee, by trust deed, "fifty thousand pounds of the first picking of the crop of 1842, then growing on his plantation, to be neatly ginned, and packed in bales, ready for market; and upon the failure of [the planter] to pay the note at maturity, the trustee was authorized to take said fifty thousand pounds of cotton, and ship the same to [the commission merchants], to be sold for the payment of the note," &c. Before the cotton was delivered, or gathered, another creditor of the planter obtained judgment against him, and had execution placed in the hands of the sheriff. The cotton was then ginned and packed, but still on the plantation, when the sheriff levied on some ninety bales of the cotton, not entirely of the first picking. The question was, whether the trust deed conveyed the *title* of the cotton, so as to place it beyond the lien of the execution. It was decided that it did; the court holding that "the terms, 'first cotton which may be gathered,' means of the early, in contra-distinction to the late gathering; and therefore, when ninety-one bales, of the early gathering, were ginned and baled, the lien attached, although there was then, in its crude state, a quantity of cotton not separated from the seed, gathered earlier in the season than that which composed the ninety-one bales."

The testimony for defendant in the present case, and the hypothesis of the charge based upon it, define and describe the cotton pledged for the debt, quite as clearly as did the deed of trust in the case of *Robinson v. Mauldin, supra*. The proof tends to show that the cotton in controversy in the

[Burkham Brothers v. Spiers.]

present suit may justly be classed as "of the first cotton that may be gathered," under the ruling in the case from which we have quoted above. The cotton had reached its proper destination, when it was placed in possession of Mr. Gafford, in whose favor the pledge or promise was made. Being in his possession, and he having a lien upon it, we think Stearns cannot maintain an action against him for the recovery of the cotton.

We find no error in the charge of the Circuit Court, and the judgment is affirmed.