## SENTER & CO. *v.* MITCHELL.

### *(Circuit Court, E. D. Arkansas.* April Term, 1883.)

1. **FRAUDULENT CONVEYANCE—ATTACHMENT.**

    Facts stated upon which an attachment was sustained, on the ground that defendant had disposed of his property to hinder and delay his creditors.

2. **MORTGAGE—CROPS TO BE GROWN.**

    In Arkansas, crops to be grown may be mortgaged, and the lien attaches as soon as they are produced.

3. **SAME—DESCRIPTION OF PROPERTY.**

    A mortgage which described the property mortgaged as "30 bales of good lint cotton, the first picking of our crop of 1882, to average 450 pounds each," describes the cotton with sufficient certainty.

4. **UNITED STATES COURT—ENFORCING REMEDIES GIVEN BY STATE LAW.**

    The remedies given by state law to suitors in the state courts, supplementary to writs of attachment for discovery of the debtor's property, are applicable to suitors in the federal courts, and may be enforced at law or in equity, according as the state law provides.

5. **SAME—DISCLOSURE OF DEFENDANT IN ATTACHMENT SUIT—PAYMENT TO MARSHAL.**

    When a statute provides that if property to satisfy a writ of attachment cannot be found, the defendant in the writ may be summoned before the court to give information on oath respecting his property, and a defendant so summoned admits on his examination that he has money in his possession legally liable to seizure in payment of his debts, the court may order him to pay the same to the marshal holding the writ, or into the registry of the court, and obedience to such order may be enforced by the usual methods by which courts enforce obedience to their lawful commands.

At Law.

*Smoote & McRae* and *U. M. & G. B. Rose,* for plaintiffs.

*W. G. Whipple,* for defendant.

CALDWELL, J. On the fifteenth day of November, 1881, the defendant, Austin Mitchell, was indebted to Milner & Collins in the sum of $1,767.69, evidenced by a negotiable promissory note of that date, and, to secure payment of the same executed a mortgage on that day on certain real estate and "30 bales of good lint cotton, the first picking of our crop of 1882, to average 450 pounds each, to be delivered in Prescott, Nevada county, Arkansas, on or before the first day of November, 1882."

On the nineteenth of December, 1881, Milner & Collins indorsed the note, and transferred the mortgage to the plaintiffs. The defendant did not deliver the cotton at the time and place appointed in the mortgage, and asked and obtained an extension of time for that purpose. He failed a second and third time to deliver the cotton as he had promised and agreed to do. Each time he gave some plausible excuse for his default, and continued thus to beguile the plaintiffs until he had gathered, baled, and sold his whole cotton crop. During this time he also sold all his other property of any value liable to seizure for debt, except the real estate embraced in the mortgage. After selling the cotton covered by the plaintiffs' mortgage, he admitted he had the proceeds, amounting to $800, but declined to pay the same, or any part of it, to the plaintiffs unless they would release the mortgage on the real estate. No part of the plaintiffs' debt has been paid, the real estate mentioned in the mortgage is worth less than half the plaintiffs' debt, and the defendant is now insolvent. The plaintiffs sued out an attachment, which the defendant traversed.

The defendant's conduct is attempted to be justified on two grounds: (1) That the mortgage on the cotton was void for uncertainty in the description; and (2) that the note and mortgage were procured from him by fraud, and are without consideration.

Under the act of February 11, 1875, a mortgage on crops to be grown is valid, and the lien attaches when the crop is produced. If it be conceded that the description of the cotton in the mortgage is too uncertain to bind third parties, it was undoubtedly good between the mortgagor and mortgagee. *McClure* v. *McDearmon,* 26 Ark. 66; *Person* v. *Wright,* 35 Ark. 169. But the description would seem to be sufficient for all purposes. "That hath certainty enough which may be made certain." The description is "30 bales of good lint cotton, the first picking of our crop of 1882, to average 450 pounds each." There is no difficulty here in identifying the particular bales covered

by the mortgage; they are the first 30 picked and baled of the mortgagor's crop of 1882. These bales were capable of identification by the fact that they were the first baled of the crop of that year; and the lien of the mortgage fastened upon them as soon as the process of baling was completed. *Robinson* v. *Maudlin*, 11 Ala. 977; *Stearns* v. *Gafford*, 56 Ala. 544. In the last case cited the court say:

"In the case of *Robinson* v. *Maudlin*, 11 Ala. 977, the grantor, who was a planter, was indebted to his commission merchants, and, to secure them, conveyed to a trustee by trust deed '50,000 pounds of the first picking of the crop of 1842, then growing on his plantation, to be neatly ginned and packed in bales, ready for market; and upon the failure of the planter to pay the note at maturity, the trustee was authorized to take said 50,000 pounds of cotton and ship the same to the commission merchants, to be sold for the payment of the note,' etc. 'The question was whether the trust deed conveyed the *title* of the cotton, so as to place it beyond the lien of an execution. It was decided that it did; the court holding that the terms 'first cotton which may be gathered,' means of the early, in contradistinction to the late, gathering; and, therefore, when 91 bales of the early gathering were ginned and baled, the lien attached, although there was then in the crude state a quantity of cotton, not separated from the seed, gathered earlier in the season than that which composed the 91 bales.' The proof in this case tends to show that the cotton in controversy may justly be classed as 'of the first cotton that may be gathered,' under the ruling in the case from which we have quoted."

On this question the case of *Person* v. *Wright, supra,* is not in point. In that case the description was an interest in the mortgagor's crop "to the extent of one 500-pound bale." No clue was given by which the bale could be identified, and the court properly held that "until separation or designation of the particular property, no action of replevin could be maintained."

The defendant has failed utterly to show fraud or want of consideration. The evidence establishes, beyond controversy, that the note and mortgage were given for a full and valuable consideration. Upon the proofs it is clear that the defendant disposed of his property, the cotton particularly, to hinder and delay the plaintiffs in the collection of their debt. The defendant does not feel that he was guilty of any moral fraud. He justifies his act to his own conscience upon grounds which the court finds either had no existence in fact, or constitute no legal justification. Whatever his motive may have been, it is clear he intended, by the disposition he made of his property, to hinder and delay his creditors in the collection of their debt. This finding supports the attachment.

The defendant has been summoned and examined under section 415 of Gantt's Digest. That section reads as follows:

Sec. 415. " When it appears by the affidavit of the plaintiff, or by the return of an officer to an order of attachment, that no property is known to the plaintiff or the officer on which the order of attachment can be executed, or not enough to satisfy the plaintiff's claim, the defendant may be required by the court to attend before it, and give information on oath respecting his property; and where it also appears by the affidavit of the plaintiff that some person other than the defendant has in his possession property of the defendant, or evidences of debt, such person may also be required by the court to attend before it, and give information on oath respecting the same."

He admits that he has in his possession and control the proceeds of the sale of the 30 bales of cotton, amounting to $800. The plaintiffs have filed a motion for a rule on the defendant to pay this money to the marshal or into the registry of the court. This motion is resisted on the ground that the court has no power or jurisdiction to make such an order.

It is vain for the statute to provide that the defendant may be required to attend before the court, "and give information on oath respecting his property," if after giving such information the court is powerless to act upon it, and require the defendant to do what is plainly and obviously his legal duty. The authority to compel the discovery necessarily implies the power to render the discovery effectual. It is a settled canon of construction that what is implied in a statute is as much a part of it as what is expressed.

Suppose a defendant to answer that he has 10 horses concealed within the jurisdiction of the court, and refuses to give information which will enable an officer to find them. May he not be committed until he does do so? Unless the court has this power, the statute is nugatory. Money is property, and in proceedings under this section there is no distinction between it and other kinds of property. The popular notion that a debtor can put his money in his pocket and *admit* that *it is there* and continue to defy his creditors, is not the law in this state. In cases of attachment he can be reached by proceedings under section 415, and after judgment he can be reached by proceedings had under sections 2713–2717. Where the discovery is made after judgment, section 2717 provides that—

" The court shall enforce the surrender of the money or security therefor, or of any other property of the defendant in the execution which may be discovered in the action, and for this purpose may commit to jail any defendant or garnishee failing or refusing to make such surrender, until it shall be done, or the court is satisfied that it is out of his power to do so."

The court possesses the like powers when the discovery is made by an examination had under section 415. The proceedings in both instances are analogous to the recognized practice in chancery cases and in bankruptcy.

The sacredness of the defendant's person is not violated, nor is he imprisoned for debt. He is simply required to do that which, upon his own admission under oath, it is his legal duty to do, and which he admits it is in his power to do. When committed for refusing to obey such an order, it is in no sense a commitment for debt. It is a commitment as a punishment for contempt in refusing to obey a valid order of the court. The jurisdiction to commit for such cause is inherent in every court, whether of law or equity. To say that a defendant in an attachment, who admits on his examination on oath that he has in his possession and control money or other property liable to seizure to satisfy the writ, cannot be required to place such means within the grasp of the law, or that obedience to such an order may not be enforced by the usual methods by which courts enforce obedience to their lawful commands, is to grant an immunity to dishonest debtors, as shocking to our sense of justice as was the imprisonment of honest men for not paying debts which they had no means to pay.

Imprisonment for debt is abolished, but the laws authorizing the seizure of the debtor's property and its application to the payment of his debts remain, as do the old as well as the new remedies given to creditors to discover property for this purpose. The examination of the defendant in attachment is to effectuate this object, and for no other purpose. But the constitution of this state does not exempt from imprisonment for debt "in cases of fraud." Article 2, § 16, Const. It would be difficult to imagine a clearer case of fraud than for a debtor to admit under oath that he had money and property to pay his debts, and at the same time refuse to surrender it for that purpose.

Suitors in this court are entitled to have enforced in their favor all the remedies supplementary to and in aid of writs of attachment and execution authorized by the state law, and the proceedings for that purpose may be at law or in equity, according as the state statute provides.

The case of *Ex parte Boyd*, 105 U. S. 647, arose under an analogous statute in the state of New York. In that case, Boyd, against whom an execution had been issued, was ordered to submit to an examination before a commissioner of the court concerning his prop-

erty. He refused to take an oath to testify under said order, whereupon he was attached and committed for contempt by the circuit court. He thereupon filed in the supreme court of the United States a petition for a writ of *habeas corpus,* which, upon a very full consideration of the case, was denied.

The following extract from the opinion shows that the examination of a debtor with the view to the discovery of assets is not a novel or unusual, nor necessarily an equitable, proceeding:

"There is certainly nothing in the nature of an examination of a judgment debtor, upon the question as to his title to and possession of property applicable to the payment of a judgment against him, and of the fact and particulars of any disposition he may have made of it, which would render it inappropriate as a proceeding at law, under the orders of the court, where the record of the judgment remains, and from which the execution issues. Such examinations are familiar features of every system of insolvent and bankrupt laws, the administration of which belongs to special tribunals, and forms no necessary part of the jurisdiction in equity. It is a mere matter of procedure, not involving the substance of any equitable right, and may be located by legislative authority to meet the requirements of judicial convenience. Whatever logical or historical distinctions separate the jurisdictions of equity and law, and with whatever effect these distinctions may be supposed to be recognized in the constitution, we are not of opinion that the proceeding in question partakes so exclusively of the nature of either that it may not be authorized, indifferently, as an instrument of justice in the hands of courts of whatever description."

An order will be entered requiring the defendant to pay into the registry of the court, within 10 days after service of the order, the $800 cash which he admits he has in his possession and control, to abide the further order of the court in the premises.