## McClure *v.* McDearmon.

EQUITY—*Liens.*—A sale or lease by one joint-stock owner of his joint inter-
est to the other for a valuable consideration, reserving, by trust deed, a
lien on the joint stock interest and the increase thereof in the line of
business, is a continuing security, enforcible in equity, between the parties
and their privies, with knowledge of the prior incumbrance.

*Appeal from Independence Circuit Court.*

HON. ELISHA BAXTER, Circuit Judge.

*Watkins & Rose,* for appellant.

A mortgage will not pass chattels *not in existence at the time
it was made, or not in the ownership of the mortgagor at the time.
1 Hilliard on Mortgages, p. 6; 2 Ib., ch. 42, sec. 4, p. 479,* and
cases cited, particularly *Moody v. Wright, 13, (Mass.) 20, 39;
Winslow v. Merchants, etc., 4, 2d, 306; Bernard v. Eaton, 2
Cush., 294; Codman v. Freeman, 3d Ga., 306; Otis v. Sill, 8
Barb., 102; Gardner & McEwen, 19 N. Y., 123; Chapin v.
Cram, 40 Maine 561; Cudworth v. Scott, 41 N. H., 476; Rose v.
Bevan, 10 Md., 466.*

The mortgage, in this case, did not even bind the forty logs
and the fifteen cords of wood on hand, at the time Ingram
sold to McClure, because it is no where shown or even claimed
in the bill, or elsewhere, that Ingram had them at the time he
made the mortgage, which was six months before the sale
by Ingram to McClure. See *Hamilton v. Rogers, 8 Md., 301;
2 Hill on Mort., ch. 42, sec. 22, p. 398.*

The notion on which the decree is based, that A. may pledge,
by mortgage, the after-acquired property of B., seems never to
have been thought of before—certainly it has never been put
in print.

We submit, then:

1st. That the injunction should have been dissolved, except
as to the forty logs and the fifteen cords of wood.

2d. That the injunction ought to have been dissolved altogether, there being no evidence that the logs and wood belonged to Ingram, when the mortgage was made, or that they were at the mill when the suit was brought.

*Byers & Cox*, for appellee.

If the mill and lease were real property, a covenant to pay rent would run with the realty. *4 Kent, 473, and n. b.*

But we will treat the lease, in this case, as being upon personal property. The lease by McDearmon to Ingram being but for one year, was a personal chattel. *2 Kent, 342 and n. b.*.

1st. It is a principle of universal application in equity, that all kinds of property, whether real or personal, capable of being sold, may be mortgaged in conformity to the maxim of the civil law, "Whatever may receive purchase and sale, may also receive hypothecation." Rents, franchises, *choses in action, possibilities,* coupled with an interest, etc., may be mortgaged. *2 Story Eqt., sec. 1021.*

Things having a *potential* existence, and contingencies and possibilities coupled with an interest, a single hope or expectation of means, founded on a right *in esse*, are capable of sale (and, consequently, of mortgage) at law. *1 Bouv. Inst. Nos. 599 to 602; 2 Kent, 468 and n. g.; 2 Kent, 401 and n. b.; 1 Parsons on Con., 523.*

And we refer specially to the case of *Hibblewhite v. McMorine, 5 M. and W., 462,* cited at length in the last named note, overruling the doctrine that the sale of property, to which the vendor has no title, and which he intends, at the time of sale, to go into the market and buy, is void and cannot be enforced.

The doctrine at law requiring the existence, actual or potential, of the thing sold or assigned, falls far short of that now entertained by the courts of equity, for they will support the assignments of contingencies and possibilities having no potential existence, but resting in mere possibility; not as a transfer to operate *in presenti*, but to take effect and attach as

soon as the thing comes *in esse.* *2 Story Eqt.*, *sec. 1040*, and the authorities cited in the notes to that selection; also, *Secs. 1040, c. and notes; 1040, d. and notes; 1055, and notes; 2 Story Eqt , sec 1021; 1 Mad., ch. 54; Adam's Eqt., 54; Kent's Com., 468, and n. g.*

· In the case now before the court, the mortgage or deed of trust given by Ingram, gave the appellee the right and power to seize the property mortgaged, as soon as it come *in esse,* and there was a default in payment by Ingram.  Ingram made default; the property mortgaged  come into being and the appellee *executed* the power vested in him as mortgagee and trustee, by seizing the property, and the mortgagor, and his privies in estate, are estopped from now questioning the mortgagee's lien thereunder.  *Moody v. Wright, 13 Met. 17; 2 Story Eq. sec. 1040 and n. 3, 6 and 7; 2 Story Eq. sec. 1040 and n. 8; Holroyd v. Marshall, 6 Jurist, N. S. 931; Hose v. Haly, 5 El. and Bl. 845; 2 Jurist, N. S. 486; 1 Parsons on Contracts, 570, 1 and N. S. and T; Congress v. Evetts, 26 E. L. and Eq. 493; Wood v. Luster, 29 Barb. 145; VanHosyer v. Cory, 34 Barb. (N. Y.) 10; Cudworth v. Scott, 41 N. Hamp. 456; Beaumont v. Crane, 14 Mass. 400.*  All of which authorities are cited in *2 Kent (11th Ed.) 616, n. 5.*

GREGG, J.


On  the 27th of August, 1868, the appellee presented his bill of complaint to the chancellor of Independence county, and prayed an injunction against the appellant, which was awarded and the bill filed in the office of the clerk of that county.

The complainant alleged that on the third of May, 1867, he and William Ingram, jointly owned a saw mill, machinery, etc., for running the mill and manufacturing lumber, and also a lease for four years, from November, 1866, of the ground on which the mill stood; that he owned one-third and Ingram two-thirds; and that they could not agree in jointly running the mill, and by arbitration, it was agreed that Ingram should

run the mill from August 1, 1867, to August 1, 1868, for the use of which he was to pay the appellant $600, and certain expenses to be incurred. And the appellee was to have a lien upon the stocks and on the lumber cut, within the year, to secure quarterly payments. The award was signed and recorded, and on the third of August, 1867, Ingram executed four writings obligatory, and a deed of trust on the stocks and lumber to be cut, to secure the payment. The deed was recorded; at maturity the first obligation was paid off.

On the first of November, 1867, Ingram delivered the mill, etc., to the appellant, and by deed of January 16, 1868, conveyed to him all his interest in the mill and apparatus connected therewith.

He also alleged that appellant had seen the deed from Ingram to him, and was notified that he would hold appellant for the payment of the writings obligatory, not satisfied; that appellant received from Ingram sixty logs, worth $150, and used the same; and that on the 31st of July 1868, the appellant had forty-seven thousand feet of lumber that had been cut on the mill, within the preceding year, on which appellee claimed a lien for the payment of the obligations; that Ingram was insolvent, and that appellant would sell the lumber if not restrained; that appellant held the same, and would not return it or pay the rents due.

The prayer of the bill was, that an account be taken between the three; that whatever might be found due to appellee be declared in his favor, on said lumber; that appellant be restrained, etc.

The bill was taken *pro confesso*, as to Ingram.

McClure, by answer, admitted the original ownership of the mill, lease, etc., as charged; admitted that he knew of the writing from Ingram to McDearmon, "called a deed of trust," at the date of his purchase, but denies that Ingram had any logs or lumber at that time; alleges that he held, as Ingram's agent, from November, 1867, to 16th January, 1868, at which time he assumed the balance　Ingram owed Ramsey for In-

gram's two-third interest, in the lease, mill, etc. Alleges he was no party to Ingram's renting, and that he informed appellee that he would assume none of Ingram's responsibilities, but he was ready to run the mill upon any satisfactory agreement, made with himself, but in no other way. He admits that the mill cut lumber of much more than the value of the writings obligatory, within the time of such renting, but that he could not distinguish any part of that from other lumber. He fails to respond to the allegations of Ingram's insolvency, or his intention to sell the lumber.

Much more testimony was taken than seems to have been necessary—there being but little contradiction in the material allegations in the pleadings.

The substance of the testimony satisfactorily shows that the parties respectively owned the shares stated; that the contract between Ingram and McDearmon was made, as alleged, and that McClure; at and before his purchase, knew of the terms of that agreement; that he took possession of the mill and refused to pay the rents; that the mill cut a large amount of lumber, and that there was of the lumber cut, between the first of August, 1867, and first of August, 1868, on the yard, at the date of the injunction, much more than sufficient to pay off the rents claimed by the appellee.

The court found for appellee; decreed that the amount of the remaining writings obligatory be paid, and that he have a lien upon the lumber enjoined, and that, if payment be not made, that it be sold, etc.

Upon the hearing, the appellant objected to the reading of the trust deed, made by Ingram to McDearmon, because it was not sufficiently stamped—there being but a fifty cent internal revenue stamp on it. On motion of the appellee, the court allowed the clerk, in open court, to affix another similar stamp, and then held the deed sufficiently stamped, to which the appellant excepted.

He, also, objected to the reading of the deed, as evidence, because it was made in the name of Wilson W. McDearmon

whose full and proper name was William Wilson McDearmon. The name in the writing obligatory was the same as in the deed.

McDearmon set out his full name in his bill, and alleged that these writings obligatory were made to him, and set them out in full, which sufficiently showed how and to whom they were executed; and this was in no way questioned by the appellant, in his answer; and such objections, at the hearing, were technical and frivolous.

There is but one question of doubt or importance in this cause, and that is, whether or not the stocks obtained and the lumber cut after the execution of the trust deed, could have been so conveyed by that deed as to be binding on the parties and their privies?

The appellant denies that he is bound by the contract with Ingram, or that the court below could properly decree a lien upon the lumber, cut by the mill, during the time of the renting.

The peculiar circumstances and inherent equities of each cause, may influence the chancellor to make the most liberal application of the established rules of equity to the facts appearing before him; the rigid rules of law should never defeat the ends of substantial justice, where the more liberal doctrines of equity jurisprudence reach the merits of the case.

We understand the rule of law to be, that a mortgagor cannot convey chattels not then in existence, and to which he has no present title. But in equity, incumbrances, not enforcible at law, are sometimes held valid.

Courts of law and courts of equity, upon imperfect titles, do not always take the same view of the conveyances. A mortgagor of land, at law, has a mere tenancy, and the mortgagee has the title and the right to take possession at any time, unless restrained by positive agreement to the contrary. But in equity the mortgagor is regarded as the real owner, the mortgage a mere security, a mere chattel interest, until after foreclosure.

A legal mortgage is the conveyance of the property intended, as a security for the performance of some prescribed act; but there are equitable mortgages, wherein the mortgagor does not actually convey the property, but does some act manifesting his intention to bind the same as a security; and courts of equity have frequently sustained claims of lien upon property that would not have been recogized by courts of law. Unreserved vendor's liens are not recognized by courts having no equitable jurisdiction; but before a chancellor it is unconscionable to hold lands under any conveyance without first paying the purchase price; and other just liens, not created as such, according to the rules governing purely law courts, are enforced in equity, where no intervening rights have accrued.

In the case of *Smithurst v. Edmunds, et al., 1 McCarter, (N. J.,) 408*, where, after acquired hotel furniture was embraced in a mortgage, the Supreme Court of New Jersey held that that which was purchased, subsequent to the execution of the mortgage, was embraced within its provisions—that it was not a mortgage in law, for want of title in the mortgagor at the time of executing the mortgage, but it was an equitable mortgage.

The Supreme Court of Illinois held that a chattel mortgage might cover after-acquired property if taken into possession before other liens attached. *Gregg v. Sanford, 24 Ill., 17.*

In the case of Walker v. Vaughan, the Supreme Court of Connecticut say: "a mortgage upon property not yet acquired will be good between parties and others, * * * upon the chattels being acquired by the mortgagor, no intervening rights having accrued." *33 Conn., 583;* and see *29 Conn., 282.*

It has been said, where a mortage was to operate as a continuing security, it will be so applied to property afterwards acquired. *Carr v. Alott, Hurl & Nor., 964; C. B., (N. S.) 471; Langdon v. Horton, 23 Eng. Com., (or 1 Hair.) 549.*

Where a cutler mortgaged his stock and tools, etc., and all stock and tools to be purchased, and all goods manufactured, and to be manufactured, and all machinery to be added, it was held a valid mortgage. *Mitchell v. Winslow, 2 Story, 630.*

In the case of Johnson v. Curtis, the Supreme Court of New York decided that a mortgage on logs, and lumber to be cut out of them, was not fraudulent—the transaction being attacked for fraud. *42 Barb.*, *585.*

Judge Story, in his *Equity Jurisprudence*, *Vol. 2*, *Sec. 1040*, lays down the rule equally as broad as in most of the cases above referred to.

But the now leading case of *Pencock et al. v. Col.*, *23 How.*, *117*, by the Supreme Court of the United States, fully establishes the doctrine that liens may be created upon chattels not in being, to take effect upon the acquisition of such property by the mortgagor, where such property comes to him in the ordinary course of his business, or is otherwise sufficiently identified, and that such liens will be enforced in equity.

In the case under consideration, it is clear that the appellee owned a one-third interest in the mill, machinery, etc., and Ingram the other two-thirds, and by just and fair means, satisfactory to both, it was found that the one-third of the rent of the mill, etc., for the time stated, was worth $600. Ingram preferred to pay that sum and have the entire mill, etc., for that time, rather than to continue the co-partnership, and McDearmon preferred to accept that sum, if the payments were secured, and to that end the deed exhibited was executed, conveying to him the stocks and lumber on hand, and the further material that might result from carrying on that business. For this consideration he turned over his property and gave the entire mill, etc., into the possession and control of Ingram for the year. Ingram then owned absolutely two-thirds, and for one year he owned the other third, with an incumbrance upon or claim against it of $600.

It certainly would have been unjust and inequitable for Ingram to have used this mill and machinery, and had the entire profits thereof, without paying a share to the appellee; and appellant, being cognizant of all the facts, purchased no better title than Ingram had; and for him to have received the entire

profits of the mill and machinery, and to pay nothing, would be no less unjust to the appellee.

And the appellant being well aware that the appellee relied upon the products of the mill for his fair share of the profits, and not upon any other credit given Ingram, and that the parties, by deed, had endeavored to create a lien upon such effects to secure such sum, and having the sole use of the mill, and all profits arising therefrom, for so long a time, we deem it unjust that he should refuse to pay the sum which he knew had been fairly settled upon as appellee's share of rents and profits, and it seems to us that this is one of those continuing securities, an equitable lien, that may well be enforced in a court of equity.

The decree of the court below is in all things affirmed with costs.